1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOEL VALERA,                              No.  2:23-cv-00191-DAD-EFB (PC)

12                  Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   B. VASQUEZ,

15                  Defendant.

16

17        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C. § 1983.  ECF No. 1.  On February 16, 2023, pursuant to 28 U.S.C. § 1915A(a), the court

19   determined that plaintiff's complaint alleged a potentially cognizable Eighth Amendment claim

20   for excessive use of force against defendant corrections officer B. Vasquez.  ECF No. 6.

21   Defendant now moves for summary judgment.  For the following reasons, defendant's motion for

22   summary judgment should be granted.

23        I.      The Complaint

24        The complaint alleges that on October 2, 2021, defendant physically and sexually

25   assaulted plaintiff by striking plaintiff approximately eighteen times with a closed fist causing

26   plaintiff's head to bounce off a concrete floor, while also rubbing his genitals against plaintiff's

27   leg and buttocks.  ECF No. 1 at 3, 4, 7.  Plaintiff alleges that surveillance video will show the

28   assault.  *Id*. at 7-8.

1

1        II.      The Parties' Factual Contentions and Evidence

2            On the date of the incident, plaintiff was in a holding cell.  Defendant and another officer

3    (Neri) were instructed to take plaintiff from the holding cell and move him back to his own cell.

4    ECF No. 24-6 at 2 ¶ 2 (defendant's declaration); ECF No. 24-5 at 2 ¶ 2 (Neri's declaration).

5            Plaintiff's claim against defendant, and the parties' factual contentions and arguments on

6    defendant's motion for summary judgment, all rely heavily on the evidence of two surveillance

7    video recordings of what happened after the officers arrived at the holding cell.  Plaintiff

8    acknowledges his entire evidence for his claim is: (1) the two surveillance videos; and (2) his own

9    account and perception of what occurred.[1] ECF No. 32 at 2, lines 8-11; *see also* ECF No. 24-3 at

10   33 (plaintiff's deposition testimony).  Defendant maintains that he did not use excessive force and

11   that the surveillance videos do not support plaintiff's allegations.

12           Plaintiff argues in his response to defendant's motion for summary judgment that he has

13   not been able to properly analyze the surveillance videos.  ECF No. 32 at 2.  Plaintiff was unable

14   to view the videos through the prison correctional counselor or the prison litigation coordinator.

15   *Id*.  Plaintiff was shown the videos at his deposition on September 27, 2023.  ECF No. 24-3 at 28-

16   29.  After defendant filed his motion for summary judgment and before plaintiff filed his

17   response, defense counsel "spent more than an hour with Plaintiff, allowing him to view the two

18   surveillance videos as often as he wanted and at different speeds."  ECF No. 33-1 at 2 ¶ 5

19   (declaration of counsel).  Plaintiff is not satisfied with these viewings and he has asked to view

20   magnified, zoomed in, or still shots from the videos.  ECF No. 32 at 2-3.  Plaintiff argues he

21   needs to view the videos in this manner:

22              … so that I can pin point at what time frame the courses of actions that I am
                proclaiming, occurred.  Without this footage of this contested matter it would be
23              hard for me to produce any evidence as to what occur[r]ed on 10-2-21 other than
                me accusing Defendant B. Vasquez verbally that such events did take place.  This
24              is why I Plaintiff Joel Valera in this matter requested the ability to view the D.V.D.
                with the footage of this contested incident on a computer with magnifying
25              capabilities since defendants Lawyer Paul Kozina is oblivious of such capabilities
                on his computer.  This request that I[']ve made to be allowed to view D.V.D. is so
26

27           _____
                 [1]  According to plaintiff's deposition testimony, he had had no previous interactions with
28   defendant.  ECF No. 24-3 at 30 lines 19-22.

                                                        2

> that I can pinpoint the courses of action that took place on 10-2-21. This is so if viewed by the court the court would know at what time frame to evaluate the footage more closely.

*Id*. at 3.

The court has viewed the two surveillance videos in the format presented by defendant[2] and has determined that enhanced or forensic examination of the videos to magnify or zoom the images is unnecessary to resolution of plaintiff's claims. The first video recording is from a viewpoint positioned above, and very close to, the holding cell. ECF No. 25 at 2 ¶ 1 (lodging video exhibit with the court) [hereinafter "Video 1"]. The second video recording is from a viewpoint at some distance from the holding cell in the other direction. *Id*. at 2 ¶ 2 (lodging second video exhibit with the court) [hereinafter "Video 2"]. Most of what transpired is shown most clearly on Video 1. Video 2 has a more complete view of the scene and shows some details that Video 1 fails to capture, but because of the distant view the individual actors are more difficult to identify in Video 2.[3] Both videos are time-and-date-stamped.

Both Video 1 and Video 2 show two officers approaching plaintiff's holding cell. Video 2 shows one officer (defendant) unlocking the door of the holding cell and reaching inside the holding cell while the second officer (Neri) stands close to the door. Video 2, at 0:22.[4] Defendant declares that: (1) he reached inside the holding cell to remove plaintiff's wrist restraints which had slid in front of his waist; (2) plaintiff struck defendant's hand, resisted, and pulled back into the cell; (3) defendant ordered plaintiff to stop resisting but plaintiff refused; and (4) defendant pulled plaintiff out of the holding cell in order to take plaintiff to the ground to

---

[2] The format is ".avi" and may be viewed on Windows Media Player. ECF No. 33-1 at 2 ¶ 6; *see also* https://support.microsoft.com/en-us/topic/file-types-supported-by-windows-media-player-32d9998e-dc8f-af54-7ba1-e996f74375d9 . Defendant's counsel declares that the .avi video format does not allow for magnification using commercially available programs. ECF No. 33-1 at 2 ¶ 6.

[3] Officers are identifiable in Video 1 by differences in their clothing. Defendant is wearing a vest with padding at the front. Neri has a dark cord crossing his chest to his right shoulder.

[4] All times cited are approximate.

maintain order and gain compliance.  ECF No. 24-6 at 2 ¶¶ 3-5.  Plaintiff does not contest defendant's account.[5]  *See generally* ECF No. 32.  Neri declares that he witnessed plaintiff strike defendant's left wrist and forearm in the holding cell, that defendant gave a verbal command to stop resisting, and that plaintiff continued to resist.  ECF No. 24-5 at 2 ¶ 3.  Neri declares that he gave plaintiff a direct order to get down but plaintiff did not comply, and that he grabbed plaintiff's right arm while defendant held plaintiff's left arm and together they forced plaintiff to the ground.  *Id*. at 2 ¶ 4.

Video 1 does not show what happened inside the holding cell.  The view of the inside of the holding cell in Video 2 is partially blocked by a stationary object but does clearly show plaintiff and defendant interacting with their arms while facing each other, and that they are at arms' length from each other for the few seconds before defendant pulls plaintiff out of the holding cell.  Video 2 at 0:22 – 0:24.  Defendant places one hand gripping on or about plaintiff's hands, and uses this grip to pull plaintiff out of the holding cell.  Video 2 at 0:24.  Defendant and Neri, acting together, bring plaintiff face-down to the floor.  Video 1 at 0:27; Video 2 at 0:27.  Defendant positions himself on top of plaintiff, while Neri crouches at plaintiff's right side.  Video 1 at 0:29; Video 2 at 0:29.  The view from Video 1 is of defendant's back to the camera, while the view from Video 2 is of plaintiff's right side where Neri crouches next to plaintiff.

Defendant declares that once on the ground he wrapped both of his arms around plaintiff's upper chest.  ECF No. 24-6 at 2 ¶ 5.  Plaintiff continued to resist by twisting left and right in an attempt to turn over.  *Id*. at 2 ¶ 6.  Plaintiff complied with defendant's second order to stop resisting.  *Id*.  Neri also declares that plaintiff continued to resist after being placed on the ground.  ECF No. 24-5 at 2 ¶ 5.  According to Neri, plaintiff stopped resisting after Neri moved plaintiff's hands above his head.  *Id*.  Neri declares that he did not see defendant punch plaintiff or intentionally rub his genitals against plaintiff's left leg.  *Id*. at 2-3 ¶ 7.

In the surveillance video, a third officer (Arana) approaches, takes hold of plaintiff's legs, lifts plaintiff's legs off the floor for a short time, and then steps back.  Video 2 at 0:31 – 0:36; *see*

---

[5]  Plaintiff has not responded to defendant's statement of undisputed facts.  See ECF No. 24-2; ECF No. 32; ECF No. 33 at 3.

*also* ECF No. 24-2 at 2 ¶ 3 (Arana's declaration); Video 1 at 0:31-36 (Arana is partially visible in Video 1, but not enough to see the leg lift).  Arana declares he was walking nearby when he saw plaintiff strike defendant inside the holding cell.  ECF No. 24-4 at 2 ¶ 3.  According to Arana, plaintiff thrashed his body from right to left after he was on the ground while defendant and Neri were securing him.  *Id*.  Within 2 seconds of plaintiff being on the ground, Arana arrived and grabbed plaintiff's leg restraints and lifted them about 3 feet off the ground to prevent plaintiff from kicking.  *Id*. at 2 ¶¶ 3, 5.  Arana declares he did not see defendant punch plaintiff or intentionally rub his genitals against plaintiff's left leg.  *Id*. at 2 ¶ 2.

Next in the surveillance video, a fourth officer enters the area through a door and stands between defendant and Neri.  Video 1 at 0:32 – 0:36.  Defendant lifts his back upward toward the camera, while Neri remains crouched at plaintiff's right side and several more officers approach and stand nearby.  Video 1 at 0:47 – 1:08; Video 2 at 0:47 – 1:08.  The officer who was fourth to arrive on the scene puts one hand on defendant's back and his other hand on Neri's back and appears to be speaking with them, while other officers continue to stand nearby and watch.  Video 1 at 1:08 – 1:40.

The surveillance video then shows defendant moving up and away and releasing plaintiff while a fifth officer moves into defendant's former position on top of plaintiff and Neri is still crouched at plaintiff's side.  Video 1 at 1:40 – 1:42.  A sixth officer then replaces Neri, crouching at plaintiff's side.  Video 1 at 1:50.  Neri declares he was relieved by officer Swinney[6] and instructed to take photos of defendant's injuries.  ECF No. 24-5 at 2 ¶ 6.  Defendant and Neri join the officers who continue to stand nearby and observe.  Video 1 at 1:50 – 3:46.  A seventh officer and an eighth officer position themselves kneeling at plaintiff's head.  Video 1 at 3:00 – 3:05.  Defendant and Neri turn and leave the surrounding group of officers through a door to the right.  Video 1 at 3:46 – 3:51.

////

---

[6] Plaintiff attached portions of an incident report to his complaint, including Swinney's account of the incident.  ECF No. 1 at 10.  Swinney described relieving Neri, and the process of placing plaintiff back in the holding cell.  *Id*.

1    The videos depict the officers who replaced defendant lifting up enough to work around

2    plaintiff's hands and forearms which are partially visible behind plaintiff's back.  Video 1 at 3:47

3    - 5:58.  They then lift plaintiff off the floor while holding him by hand restraints.  Video 1 at 5:58

4    - 6:04.  A female officer wearing a black shirt and with a clipboard enters the scene and at times

5    is seen speaking with other officers.  Video 1 at 4:49 – 13:30.

6    Once lifted off the floor, plaintiff is seen standing with his back to the camera, an officer

7    on either side holding his arms, and another officer in front of him.  Video 1 at 6:04 – 6:58.  The

8    back of plaintiff's head is clearly visible, and shows no sign of injury.[7]  Video 1 at 6:15.  A male

9    officer with a clipboard stands in front of plaintiff and appears to be speaking with plaintiff and

10   taking notes.  Video 1 at 6:58.  The two officers at plaintiff's sides turn him around, walk him

11   back into the holding cell, and close the door.  Video 1 at 7:24 – 7:50.  Throughout, other officers

12   continue to stand at the scene; some leave and others arrive while defendant and Neri eventually

13   rejoin the group.  Video 1 at 7:50 – 13:30 (Neri re-enters the scene at about 8:56; defendant re-

14   enters at about 10:20).

15   Plaintiff's complaint alleges he suffered a swollen head, bloody mouth and dizziness for

16   around two months from being "struck in the face and head area with a closed fist and force [sic]

17   around eighteen times."  ECF No. 1 at 3.  At deposition, plaintiff acknowledged he had no visible

18   head injuries, and testified that he might have been struck nine times, instead of eighteen times.

19   ECF No. 24-3 at 32.  Defendant declares that plaintiff was medically evaluated at the scene and

20   his only claimed injury was shoulder pain.  ECF No. 24-6 at 2 ¶ 9; *see also id*. at 5 (medical

21   report prepared by "J. Floyd" at 2:40 p.m. on October 2, 2021.").

22   Plaintiff has not responded to any of defendant's statements of undisputed facts.  ECF No.

23   24-2; ECF No. 32; ECF No. 33 at 3.  In his response to defendant's motion, plaintiff does not

24   mention the complaint's allegations that defendant repeatedly struck or punched him; plaintiff

25   instead focuses on his allegations of sexual touching.  *See generally* ECF No. 32.  Plaintiff's

26

27        [7]  Because plaintiff was face-down on the floor, any move to strike plaintiff's head on the floor would have impacted his face or possibly the sides of his head.

28

unverified response reiterates his allegations that defendant intentionally and lewdly rubbed his genitalia on plaintiff. *Id*. at 1. Plaintiff maintains that he needs enlarged images from the surveillance videos to pinpoint evidence for his claims. *Id*. at 3.

Plaintiff testified at his deposition that defendant rubbed his genitals on plaintiff's leg for about five seconds and that defendant's intent was to cause plaintiff to feel weird, rather than because defendant was trying to secure plaintiff. ECF No. 24-3 at 30-31. In total, defendant was on top of plaintiff for no more than 75 seconds. Neri was crouched next to plaintiff the entire time defendant was on top of plaintiff. Other officers were moving around the main actors, and occasionally one of them walked between the main actors and the camera, but otherwise defendant's back and shoulders are visible throughout the time he was positioned on top of plaintiff. Video 1, at 0:27 – 1:40. Defendant's posture is essentially stationary. Defendant's back and shoulders do not move in any way that would indicate defendant was punching plaintiff, or repeatedly striking plaintiff's head against the floor, or rubbing his genitals against plaintiff's body.

Neri attaches five photos of defendant's injuries to his declaration. ECF No. 24-5 at 2 ¶ 6. The photos show some marks consistent with bruising on defendant's right elbow, left forearm, and left knee. *Id*. at 5-7.

III.     Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a

7

genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

8

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

*Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On May 23, 2023, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

IV.      Excessive Force Standard

To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must demonstrate that prison officials applied force maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court evaluates (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id*. at 7; *see also id*. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

////

1       V.      Analysis

2           Plaintiff has not shown a triable question whether defendant used excessive force during

3       the approximately 75 seconds that he restrained plaintiff.  Defendant, Neri, and Arana all declare

4       that plaintiff struck at defendant when defendant reached into the holding cell, and all three of

5       them perceived a need to use force to restrain plaintiff.  Their accounts are consistent with the

6       surveillance video of the holding cell.  The photograph of defendant's left forearm shows

7       markings consistent with bruising where the officers declare that plaintiff struck defendant.

8           Four other officers participated with defendant in restraining plaintiff during the five and a

9       half minutes that plaintiff was on the floor.  All five officers appear to have reached similar

10      conclusions about the need to apply this degree of force to hold plaintiff on the floor until he

11      stopped resisting and hand restraints were secured.  Defendant moved off of plaintiff and was

12      replaced by another officer after the first 75 seconds of the restraint.  The relieving officer stayed

13      positioned on top of plaintiff for about another four minutes.

14          Nothing in the record shows a genuine issue whether the force that defendant used was

15      excessive in the circumstances.  Plaintiff's account that he perceived defendant to be repetitively

16      punching him and/or striking his head on the floor, does not state any genuine factual issue in the

17      face of:  (1) the surveillance videos showing no movements consistent with defendant punching

18      or striking plaintiff; (2) the declarations of defendant and close participants Neri and Arana that

19      this did not happen; and (3) the lack of evidence that plaintiff suffered any physical injury from

20      being punched or his head struck against the floor.

21          Similarly, plaintiff has not shown a genuine issue on his claim that defendant sexually

22      assaulted him by rubbing his genitals against plaintiff's leg and nothing in the video recordings

23      supports that claim.  "[A] prisoner presents a viable Eighth Amendment claim where he or she

24      proves that a prison staff member, acting under color of law and without legitimate penological

25      justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for

26      the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or

27      demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  The

28      surveillance videos do not show defendant moving in any way that would indicate deliberate

                                                    10

physical sexual contact or movements.  Defendant, Neri, and Arana all declare that the genital rubbing did not happen.  The most generous reading of plaintiff's evidentiary assertions is that defendant rubbed his genitals on plaintiff's leg for five seconds.  De minimis touching, even if malevolent, does not rise to the level of a constitutional violation unless repugnant to the conscience of mankind. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010).  Viewing the evidence in the light most favorable to plaintiff, he has not shown a genuine issue whether defendant used malevolent touch "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. at 9-10.

Plaintiff has not demonstrated any genuine issue of material fact for trial as to whether defendant used excessive force or sexually assaulted plaintiff in the course of defendant's participation in restraining plaintiff.  Plaintiff's argument that enlarged video images would support his allegations is ineffective to counter the totality of defendant's evidence.  Plaintiff cannot carry his burden to prove that defendant violated his Eighth Amendment rights, either by using excessive force or by sexual rubbing of defendant's genitals on plaintiff's leg.  There is no genuine issue of fact for trial on plaintiff's Eighth Amendment claim. *See Matsushita*, 475 U.S. at 587.  Defendant is entitled to summary judgment.[8]

VII.    Recommendation

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 24) be granted, judgment entered for defendant, and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

---

[8] Defendant also argues that he is entitled to qualified immunity.  Because the court finds that defendant is entitled to summary judgment, it is not necessary to address this additional argument. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 12, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE